IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WENDY L.,[1]                                                      No. 6:22-cv-00515-HZ

             Plaintiff,                               OPINION & ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

             Defendant.

Betsy R. Shepherd
425 Riverwalk Manor Dr.
Dallas, GA 30132

     Attorney for Plaintiff

Kevin Danielson
Executive Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Jacob Phillips
Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

      Attorneys for Defendant.

HERNÁNDEZ, District Judge:

      Plaintiff Wendy L. brings this action seeking judicial review of the Commissioner's final

decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI").

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. §

1383(c)(3)). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB and SSI on December 10, 2018 and March 5, 2019, respectively,

alleging an onset date of September 3, 2015. Tr. 16.[2] Plaintiff's date last insured ("DLI") is

March 31, 2018. Tr. 17. Her application was denied initially and on reconsideration. Tr. 77, 104-

06.

      On January 12, 2021, Plaintiff appeared with counsel for a hearing before an

Administrative Law Judge ("ALJ"). Tr. 36-76. On March 4, 2021, the ALJ found Plaintiff not

disabled. Tr. 13-35. The Appeals Council denied review. Tr. 1-7.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on PTSD, back problems, and depression. Tr. 252. At the

time of her alleged onset date, she was 38 years old. Tr. 248. She has a high school education

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative
record, filed herein as Docket No. 9.

2 – OPINION & ORDER

and past relevant work experience as an electronics technical customer service representative

(Dictionary of Occupational Titles number ("DOT") 249.362-026). Tr. 29.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step

procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases,

agency uses five-step procedure to determine disability). The claimant bears the ultimate burden

of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137,

140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines

whether the claimant has a "medically severe impairment or combination of impairments."

*Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not

disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly

or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if

not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

3 – OPINION & ORDER

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the

claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to

the Commissioner. In step five, the Commissioner must establish that the claimant can perform

other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the

Commissioner meets their burden and proves that the claimant can perform other work that

exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566,

416.966.

### THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity after her alleged onset date through her date last insured. Tr. 19. Next, at steps two and

three, the ALJ determined that Plaintiff has the following severe impairments: "minor

degenerative disc disease, stenosis, spondylosis, and facet syndrome of the lumbar spine with

radiculopathy; chronic compression fractures and mild spondylosis of the thoracic spine;

sacroiliitis; obesity; an affective disorder (called either major depressive disorder or depression);

anxiety (also called panic disorder by her social worker); and posttraumatic stress disorder

("PTSD") (20 CFR 404.1520(c) and 416.920(c))." Tr. 19. However, the ALJ determined that

Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr.

20. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform

light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [T]he claimant can occasionally lift/carry 20 pounds and frequently lift/carry ten
> pounds. She can stand and/or walk four hours and sit six hours of an eight-hour
> workday. The claimant can never climb ladders, ropes, or scaffolds, and she can
> occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. She
> can tolerate no exposure to hazards, including machinery with moving parts,
> unprotected heights, or operating heavy machinery. Mentally, she is limited to
> understanding, remembering, carrying out, and maintaining attention and
> concentration on no more than simple tasks and instructions, defined specifically

4 – OPINION & ORDER

as those job duties that can be learned in up to 30 days' time. She can sustain only ordinary routines and make no more than simple, work-related decisions.

Tr. 23. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 29. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as router clerk (DOT 222.587-038), storage rental clerk (DOT 295.367-026), and marking clerk (DOT 209.587-034). Tr. 30. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 30.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) improperly discounting Plaintiff's subjective symptom testimony; (2) incorrectly evaluating the medical evidence; and (3) failing to provide

5 – OPINION & ORDER

germane reasons for disregarding lay witness testimony, and (4) failing to include relevant

limitations in questions to the Vocational Expert at step five. This Court disagrees.

## I.      Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL

5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom

evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other

grounds). First, the ALJ determines whether there is "objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such

evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and

convincing reasons in order to reject the claimant's testimony about the severity of the

symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient."

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834

(9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a

claimant's testimony by simply reciting the medical evidence in support of his or her residual

functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and

must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195

(9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons

proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ

did not arbitrarily discount the claimant's testimony.").

Plaintiff alleged she was unable to work due to back problems, depression, and

posttraumatic stress disorder. The ALJ summarized Plaintiff's hearing testimony as follows:

> [D]ue to her pain, she cannot sit for longer than ten minutes, stand in one place for long, carry a gallon of milk 20 steps, or maintain any one position for long with pain; and must lie down with a dangerously hot heating pad to control the pain in her tailbone. As a result of her anxiety, depression, and PTSD, she has difficulty performing household chores and grooming herself; experiences nightmares, flashbacks, hypervigilance, and crying spells; and is unable to deal with stress, take constructive criticism, or pay attention sufficiently to finish conversations with others.

Tr. 24

The ALJ found Plaintiff's medically determinable impairments could reasonably be

expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 24.

However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and

limiting effects of her symptoms were not entirely consistent with the medical evidence and

other evidence in the record. Tr. 24. Specifically, the ALJ found Plaintiff's symptom allegations

were inconsistent with the objective medical evidence and treatment history, inconsistent with

Plaintiff's activities of daily living and that Plaintiff's conditions improved with treatment.

### A.    Objective Medical Evidence

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom

allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to

assist us in making reasonable conclusions about the intensity and persistence of your

symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the

claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."

*Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)(emphasis in original); s*ee also Connett v.*

*Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the

plaintiff's testimony of weight fluctuation was inconsistent with the medical record). And in

some cases, the ALJ can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2007) ("'Graphic and expansive' pain symptoms could not be explained on objective, physical basis by claimant's treating physician."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain).

The ALJ reasonably discounted Plaintiff's testimony about her physical limitations for their contradiction with objective medical evidence in the record. Plaintiff testified that she had extreme lower back pain and could walk for just three to five minutes and lift only five pounds; was unable to stand upright long enough to even wash her hands; and needed to lay down with a heat pad for the majority of each day. Tr. 51, 53, 275. As the ALJ recognized, this testimony stands in contrast to evidence that Plaintiff walked with a normal gait and had adequate strength. *See, e.g.,* Tr. 422, 425, 432. The ALJ further explained that diagnostic studies were "described too modestly to adequately explain the severity" of limitations Plaintiff alleged. Tr. 25. Indeed, lower back imaging in October 2018 was unremarkable, resulting in a "[n]egative lumbar spine examination." Tr. 427. Two years later, in October 2020, X-rays showed only "minor degeneration at L4-L5," and her doctor concluded that there were "[n]o acute changes to account for her pain" and simply recommended "gentle stretching and range of motion exercises." Tr. 942; *see also* Tr. 1403 (the October 2020 imaging showing only "Minor L4-5 and L5-S1 disc degeneration."). These objective medical records, and many unremarkable physical examinations, further suggest Plaintiff's testimony that she felt like somebody had "taken a sledgehammer to [her] tailbone," was overstated. Tr. 48. This is a clear and convincing reason,

8 – OPINION & ORDER

supported by substantial evidence, for the ALJ to cite to discount Plaintiff's subjective symptom testimony.

        B.      Improvement with Treatment

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

Here, the ALJ reasonably concluded that Plaintiff's conditions improved with treatment, which undermined her hearing testimony concerning the severity of her symptoms. Tr. 20-21. As noted above, an ALJ should consider the type and effectiveness of treatment in weighing the claimant's allegations. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). For example, the ALJ found that while Plaintiff described her pain as "not adequately controlled," Plaintiff's functioning improved significantly through physical therapy early in the relevant period to the point where she was able to carry 20 pounds, reported significant reduction of pain and increased mobility, and admitted that her pain had improved nearly to where it had been before her car accident just a few months earlier. Tr. 25, 1040, 1042, 1052, 1064-65, 1067, 1148, 1155. When her physical therapy ended in January 2016, Plaintiff reported she was "able to bend forward now without pain," her back pain was "less frequent" with only occasional "flare ups," and on average her pain was a "4/10," and a "6/10" on her worst days. Tr. 1155-56. More recent records from 2019 and 2020 show that medication also improved Plaintiff's pain

symptoms and further undermined her extreme claims. In contrast to Plaintiff's hearing

testimony that her lower back pain felt like somebody was hitting her spine with a

sledgehammer, records show Plaintiff's symptoms were tolerable and her "[b]ack pain [was]

doing well" on her medication. Tr. 916, 956, 962; *see also* Tr. 458 (May 2018 showing that

Plaintiff's only complaint was an acute strain after "lifting a week ago," that had temporarily

caused occasional radiating pain that was improving); 1307 (stating with respect to Plaintiff's

foot pain that "[p]ain meds are working and well controlled"); 1373 ("The current medical

regimen is effective; continue present plan and medications").

The ALJ also reasonably discounted Plaintiff's reports of mental health symptoms

because they improved with treatment as well. The ALJ cited Plaintiff's therapy sessions, which

reduced Plaintiff's anxiety and increased her energy; she was better able to get out; and she was

less avoidant of situations. *See, e.g.,* Tr. 469, 488, 708, 770. In August 2017, she reported having

some increased anxiety around an anniversary but was otherwise "doing well." Tr. 771. Even

when she had one "triggering event" in 2018, she reported this "did not increase any avoidant

behavior" and she was able to return "with no issues." Tr. 476. In April 2019, she reported doing

well on Percocet and she had no issues with depression. Tr. 847-48. Therapy notes from June

2020 state that "[o]verall [Plaintiff] reports that she is doing well . . . ." Tr. 949. This evidence

showing that Plaintiff's mental health symptoms improved undercut her claims of debilitating

mental limitations.

C.      Daily Activities

The ALJ also reasonably discounted Plaintiff's subjective symptom testimony about her

mental and physical limitations because it was inconsistent with her reported daily activities. Tr.

21-22, 26. Activities of daily living can form the basis for an ALJ to discount a claimant's

testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

At the hearing, Plaintiff testified to significant back pain, depression, anxiety, and PTSD, Tr. 51-52, which the ALJ reasonably concluded conflicted with her other testimony about activities of daily living. Even when they do not show transferable work skills, daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). Here, the ALJ contrasted Plaintiff's reports of debilitating pain and mental health symptoms with evidence showing that Plaintiff joined a lodge, entered billiard tournaments, and played cards and bingo. Tr. 454, 477, 751-52, 761. She went on vacations and camping trips, Tr. 59, 456, 458, 472, 517, 756, and was even looking forward to rafting a river with her friend, Tr. 454. And she was able to drive to the post office and to go shopping. Tr. 273.

The ALJ reasonably found that these activities, while limited, undermined Plaintiff's allegations of disability and supported the ALJ's decision to discount her allegations. Evidence that Plaintiff could go camping, travel, and drive was at odds with her claim that even on a good day, she could sit for only ten minutes and most days could sit for only three to five minutes, Tr. 50, 270, or that her pain was so severe that it was "really hard to actually focus . . . on pretty much anything," Tr. 57. These activities also weakened Plaintiff's testimony that she left her home "maybe three to five times a week" simply to check mail and go shopping, Tr. 56, or that her depression would prevent her from interacting with people in a workspace, Tr. 60. The ALJ also reasonably cited Plaintiff's relatively normal presentation at the hearing undermined her

claims that her conditions prevented her from concentrating or staying on task, even when

talking. Tr. 57.

In sum, the ALJ offered three clear and convincing reasons for discounting the severity of

Plaintiff's symptom testimony regarding her mental and physical limitations. Although Plaintiff

offers an alternative interpretation of her activities, the Court must uphold the ALJ's findings if

inferences reasonably drawn from the record support them, even if evidence may be susceptible

to more than one rational interpretation. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

1193 (9th Cir. 2004). That is the case here.

## II.     Medical Opinion Evidence

Plaintiff argues the ALJ failed to provide legally sufficient reasons for finding the

opinion of Plaintiff's treating therapist, Hollie Lolhmann, unpersuasive. For claims filed on or

after March 27, 2017, ALJs are no longer required to give deference to any medical opinion,

including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017

WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Instead,

the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are:

supportability, consistency, relationship to the claimant, specialization, and "other factors." 20

C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the

evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the

medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2).

In doing so, the ALJ is required to explain how supportability and consistency were considered

and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2),

416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Plaintiff's treating therapist, Hollie Lolhmann, LCSW, completed a statement on May 7, 2019, in which she opined Plaintiff would have category III limitations in her ability to maintain attention and concentration for extended periods, complete a normal work day or work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and travel in unfamiliar places or use public transportation. Tr. 807-09. Ms. Lolhmann opined Plaintiff was likely to be absent from work about two days each month as a result of having her mental health symptoms triggered by environmental cues reminding her of past traumatic events. For the same reasons, Ms. Lolhmann opined Plaintiff would likely be off task for about ten percent of the typical work day. Tr. 810. The VE testified that time off task or absences consistent with Ms. Lolhmann's opinion would preclude competitive employment. Tr. 70.

The ALJ found LCSW Lolhmann's opinion was unpersuasive as follows:

> Although her opinion is supported by a treating relationship with the claimant that ordinarily suggests a familiarity with the claimant and her impairments and symptoms, her assessment does not explain any basis for her findings. More importantly, such severe mental limitations are inconsistent with her own treatment notes describing the claimant's adequate mental functioning.

13 – OPINION & ORDER

Tr. 27.

The ALJ sufficiently considered the supportability of Ms. Lolhmann's opinion. The supportability factor looks to the relevant objective medical evidence—that is, clinical signs and diagnostic findings, *see* 20 C.F.R. §§ 404.1502(c), (f), (g)—and the supporting explanations a medical source provides for their opinions. 20 C.F.R. § 404.1520c(c)(1). "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation" when evaluating a medical opinion. *Ford v. Saul,* 950 F.3d 1141, 1155 (9th Cir. 2020). The ALJ explained that Ms. Lolhmann's opinion "does not explain any basis for her findings" and "more importantly," the severe limitations she assessed were "inconsistent with her own treatment notes." Tr. 27. For example, Ms. Lolhmann offered no explanation or foundation for the opinion that for twenty percent of a workday, Plaintiff would be unable to maintain attention and concentration for two-hour segments. Tr. 808. The opinions about "Category III" limitations precluding productivity in areas such as accepting instructions and responding appropriately to criticism from supervisors likewise lacked explanation. Tr. 808-09. Nor did Ms. Lolhmann record any objective findings to support concentration deficits, let alone disabling ones. Tr. 808-09. Ms. Lolhmann's treatment records from 2019 contain no objective findings, or even a mental status examination that would substantiate Plaintiff's mental state. *See* Tr. 690-92. When Ms. Lolhmann did perform a mental status examination in April 2018, her findings were unremarkable: despite Plaintiff's self-report of being depressed, Ms. Lolhmann found Plaintiff had normal emotional state and affect along with normal behavior, speech, thought process and content, intellectual functioning, memory and cognition, and insight. Tr. 468.

The ALJ also reasonably considered that Ms. Lolhmann's opinions were inconsistent with other record evidence when finding them unpersuasive. An opinion's persuasiveness is in

relation to its consistency with evidence from other sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Woods*, 32 F.4th at 792. Specifically, the ALJ cited records from providers like Dr. Michael Allen and Bridget Knight, NP, who assessed Plaintiff's mental status and recorded benign findings at odds with the psychological deficits Ms. Lolhmann assessed. Tr. 27. These records showed Plaintiff had adequate mental function, including normal mood, affect, judgment, and thought content; she had no concentration deficits; and she demonstrated normal behavior. *See, e.g.,* Tr. 516, 902.

Plaintiff argues that, to the contrary, the record evidence supports Ms. Lolhmann's opinion more robustly than the ALJ gave it credit for. Pl. Reply 2-3. Plaintiff specifically cites Ms. Lolhmann's treating relationship as support for this conclusion. *Id.* at 2.[3] Under the revised regulations, however, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s)." 20 C.F.R. §§ 404.1520c, 416.920c; *see also Farlow v. Kijakazi*, 53 F.4th 485, 488-89 (9th Cir. 2022). And ultimately, Plaintiff's arguments are an effort to have this Court re-weigh the evidence, which this Court may not do. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (noting "[w]e may not reweigh the evidence or substitute our judgment for that of the ALJ"). Because the ALJ reasonably considered the supportability and consistency of Ms. Lolhmann's opinions, and the ALJ's conclusion was supported by substantial evidence, the Court will not disturb the ALJ's finding that Ms. Lolhmann's opinion was unpersuasive.

---

[3] Plaintiff also argues it was error to craft an RFC while simultaneously finding all the medical opinions about Plaintiff's mental health unpersuasive. Pl. Reply 2-3. The Ninth Circuit has held otherwise. *See Farlow,* 53 F.4th at 488-89 (finding ALJ did not err in discounting the only medical opinion of record, explaining that there is a presumption that "ALJs are, at some level, capable of independently reviewing forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work").

### III.   Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Under the new regulations, however, the ALJ must still articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F.Supp.3d 858, 869 (D. Or. 2021).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

Here, although the ALJ did not sufficiently analyze the lay witness testimony, any error in failing to do so was harmless. Here, Plaintiff's parents described symptoms that mirrored Plaintiff's own allegations. *See* Tr. 262-69, 322-29. As discussed above, the ALJ provided

legally sufficient reasons for concluding that Plaintiff's testimony was unpersuasive. These reasons apply equally well to the lay witness testimony. Any error in rejecting the lay witness testimony was therefore harmless. *Molina*, 674 F.3d at 1117.

## IV.     Step Five Analysis

Finally, Plaintiff argues that the ALJ erred by omitting the full extent of Plaintiff's subjective symptom testimony, lay witness testimony, and the Ms. Lolhmann's opinions from his hypotheticals posed to the vocational expert. Where a plaintiff's step five assignment of error merely re-states her mistaken argument that the ALJ's RFC finding did not account for all her limitations, there is no basis to remand. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008). Because the Court finds the ALJ did not err in his decisions to discount lay testimony, Plaintiff's symptom testimony, or in finding Ms. Lolhmann's opinion unpersuasive, it rejects Plaintiff's step five argument as well.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED:___July 24, 2023_____.


_____
MARCO A. HERNÁNDEZ
United States District Judge